**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Frank Karban,<br><br>Plaintiff,<br><br>v.<br><br>J. Ostrander, et al.,<br><br>Defendants. | No. CV 17-03618-PHX-DWL (JFM)<br><br><br>**ORDER** |

Plaintiff Stephen Frank Karban ("Karban"), who is currently confined at the Arizona State Prison Complex in Florence, Arizona, brought this civil rights action pursuant to 42 U.S.C. § 1983 against Arizona Department of Corrections ("ADC") Officer Jacqueline Ostrander ("Officer Ostrander"). (Doc. 1.) Before the Court are the parties' cross-motions for summary judgment. (Docs. 104, 106.)[1] As explained below, both motions will be denied.

I. **Background**

In his complaint, Karban alleges a First Amendment retaliation claim against Officer Ostrander. (Doc. 1.) Specifically, Karban alleges that, on September 2, 2017, he was sitting at a table in the ADC's meeting room, meeting with a female visitor, when Officer Ostrander "approached the plaintiff and his visitor . . . [and] made a statement,

---

[1] The Court issued an Order with the Notice required under *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), which informed Karban of his obligation to respond to Officer Ostrander's Motion and the requirements under Federal Rule of Civil Procedure 56. (Doc. 110.)

'Policy does not let you sit like that.'" (*Id.* at 8.) Karban alleges this statement was confusing and inaccurate because he and his visitor weren't violating any of the prison's no-contact rules at the time. (*Id.*) Thus, Karban alleges that, as soon as his visitor left, he met with Officer Ostrander in an attempt "to have an on-going problem resolved." (*Id.*) According to Karban, the prison's grievance policy required him to engage in such a verbal discussion with Officer Ostrander as the first step in pursuing a grievance. (*Id.*) Karban alleges that, during this discussion, he asked Officer Ostrander "to show me in the rules of visitation conduct the rule I had violated. She could not identify any rule." (*Id.* at 9.) Karban alleges that Officer Ostrander filed a "false" disciplinary report against him following this meeting, in an attempt to retaliate against him for invoking "the informal verbal resolution portion of the grievance system." (*Id.* at 9-10.) Finally, Karban alleges that, although he was eventually able to secure the dismissal of the disciplinary report through the prison's appeal process, he suffered various adverse consequences as a result of the report being filed. (*Id.* at 12.)

II. **Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, *i.e.,* a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, *i.e.,* the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court does not make credibility determinations; it must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). Where the nonmovant is a pro se litigant, the court must consider as evidence in opposition to summary judgment all of the nonmovant's contentions set forth in a verified complaint or motion. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

III. **Karban's Motion**

In their respective motions, the parties agree[2] that Karban must establish the following five elements to prevail on his claim: (1) he engaged in protected conduct, (2) a state actor took some adverse action against him, (3) causation (*i.e.,* the state actor took the adverse action because he had engaged in protected conduct), (4) chilling effect on First Amendment rights, and (5) the adverse action did not reasonably advance a legitimate correctional goal. *Entler v. Gregoire*, 872 F.3d 1031, 1040 (9th Cir. 2017) (citing *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

Karban isn't entitled to summary judgment because, among other things, there is a disputed issue of material fact as to the causation element. A key issue in this case is whether Officer Ostrander's report was accurate. The report states, in the "Statement of

---

[2] *Compare* Doc. 104 at 6 (Karban's motion), *with* Doc. 106 at 4 (Officer Ostrander's motion).

Violation" section, that Officer Ostrander "observed inmate Karban #234332 with his outer thigh pressed up against his visitor['s] . . . right thigh." (Doc. 107-7 at 2.) In his motion, Karban argues the report was "false or pretextual" because the video footage from the meeting room, which is part of the summary judgment record, "reveals the plaintiff could not, and did not, engage in the conduct described by Defendant Ostrander." (Doc. 104 at 9-11.) In response, Officer Ostrander contends a jury could "easily conclude," after watching the video, that Karban's outer left thigh was pressed up against the right thigh of his visitor in the manner described in the report. (Doc. 140 at 2-3.)

Where video footage is part of the summary judgment record, the Court must consider the facts in the light depicted by the video. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Here, the video footage is inconclusive. In the single angle provided in the video, Karban's and his visitor's legs cannot be seen—the camera angle is from behind Karban's head and his upper body blocks a view of their legs. (Doc. 93, Ex. G.)[3] Nevertheless, the Court agrees with Officer Ostrander that the jury could conclude, after reviewing the video, that some thigh-touching occurred. If the jury reached such a conclusion, this would undermine Karban's theory that Officer Ostrander's filed a "false" report in an effort to retaliate against him. *See generally Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) ("To prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct.") (citations and internal quotation marks omitted).[4]

It is also relevant that the incident on September 2, 2017 was not the first time Karban was suspected of engaging in improper conduct in the prison's visitation room.

---

[3] Multiple video cameras were in place in the visitation room on September 2, 2017, but only one camera angle of Karban and his visitor was preserved. (Doc. 134 at 2-3.)

[4] Karban also argues the ADC's code provisions and no-contact rules don't prohibit thigh-to-thigh contact between inmates and visitors. (Doc. 144 at 11.) However, Officer Ostrander has submitted a declaration from Stephen Morris, an ADC deputy warden, averring that the rules prohibit all "physical contact that is not in plain, unobstructed view of a supervising corrections officer." (Doc. 107-11 ¶ 7.) This would include thigh-to-thigh contact occurring underneath a table.

Karban is a convicted sex offender with a long history of violating the prison's visitation and contact rules, with many of those violations stemming from visits by the same female visitor whose thigh he allegedly touched during the incident at issue in this case. (*See generally* Doc. 106 at 2-3.) This prior history is not, as Karban argues (Doc. 144 at 5), irrelevant or improper character evidence. To the contrary, it bears upon Officer Ostrander's state of mind—a jury could conclude it helped prompt Officer Ostrander to honestly (even if mistakenly) perceive Karban to be touching the thigh of his visitor during the September 2, 2017 visit. Such a determination could also defeat Karban's retaliation claim. *Cf. Redd v. Nolan*, 663 F.3d 287, 295 (7th Cir. 2011) ("[E]ven if Velez's conclusions were wrong, that would not support an inference that he or other DOC officials intended to retaliate against Redd for exercising her rights under the First Amendment . . . ."); *Davis v. Haines*, 2008 WL 2610144, *1 (W.D. Wis. 2008) ("Plaintiff does not point to any evidence suggesting that defendants did not honestly believe plaintiff was a gang member, which is all that matters for the purpose of countering plaintiff's claim of unlawful retaliation. A genuine mistake is not a constitutional violation.").

IV. **Officer Ostrander's Motion**

In her motion and reply, Officer Ostrander concedes there is a legitimate dispute of fact concerning the first, second, and third elements of Karban's First Amendment claim. (Doc. 106 at 4-5; Doc. 153 at 2.) Accordingly, she seeks summary judgment on the following three grounds: (1) Karban can't establish the fourth element of his claim (*i.e.,* chilling effect), (2) Karban can't establish the fifth element of his claim (*i.e.,* the adverse action did not reasonably advance a legitimate correctional goal), and (3) qualified immunity.

    A.    <u>Chilling Effect</u>

Officer Ostrander argues Karban can't prove the "chilling effect" element of his claim because he ultimately succeeded in persuading a different prison official to overturn the disciplinary report. (Doc. 106 at 5-6.) According to Officer Ostrander, "[t]he fact that an ADC official exercised discretion upon hearing the circumstances of Plaintiff's

complaints proves the opposite" of a chilling effect. (*Id.*)

This argument is unavailing. The Ninth Circuit has held that "an *objective* standard governs the chilling inquiry; a plaintiff does not have to show that his speech was *actually* inhibited or suppressed, but rather that the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities. To hold otherwise would be unjust as it would allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Brodheim*, 584 F.3d at 1271 (emphases added) (citations and internal quotation marks omitted). Officer Ostrander's narrow focus on how Karban, who is clearly an "unusually determined plaintiff," reacted to the disciplinary report is therefore misplaced—the focus must be on how a hypothetical prisoner of ordinary firmness might react. And as Karban correctly argues (Doc. 104 at 11-12), if a prisoner were issued a false disciplinary citation every time he attempted to discuss an issue with a staff member—which is the required first step in the ADC grievance process—the prisoner would likely stop seeking redress of complaints.[5]

### B. Reasonably Advance Legitimate Correctional Goal

"To prevail on a retaliation claim, a prisoner must show that the challenged action did not reasonably advance a legitimate correctional goal." *Brodheim*, 584 F.3d at 1271 (citation and internal quotation marks omitted). Officer Ostrander argues that prison officials have legitimate reasons for instituting strict guidelines about what type of contact is and is not permissible in a prison facility. (Doc. 106 at 6-7.) Thus, Officer Ostrander argues that her issuance of a disciplinary citation against Karban served the legitimate

---

[5] Ostrander also argues that no reasonable prisoner would have felt a chilling effect from her conduct—the mere writing of a disciplinary report—because she "had nothing to do with enforcing the citation, deciding whether it should be upheld or not, or taking any other action against him." (Doc. 153 at 3.) But a false accusation may constitute retaliation where the subsequent deprivation of a benefit "was the natural and proximate result of" that accusation and the facts raise an inference that the accuser "intended that result." *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) (citation omitted). These are fact issues that can't be resolved at the summary judgment stage.

correctional goal of enforcing the ADC's no-contact rules, which protect children (who are often present in the visitation room) and deter contraband. (*Id.* at 7.)

Karban does not dispute that prisons have a legitimate penological interest in instituting contact visitation rules for security reasons; rather, he argues that Officer Ostrander's action did not serve such an interest because (1) there was no thigh contact as alleged in the citation, and (2) even if there had been the alleged thigh contact, this type of contact does not violate any of the contact rules in the relevant policy. (Doc. 144 at 11.)

Officer Ostrander is not entitled to summary judgment with regard to the fifth element. As discussed in earlier sections of this order, there is a factual dispute in this case concerning whether Karban actually touched his visitor's thigh (and/or whether Officer Ostrander honestly believed she witnessed such touching). Karban's position is that no touching occurred and that Officer Ostrander simply lied about seeing it in an effort to retaliate against him for initiating the oral grievance process. If one accepts those facts, then Officer Ostrander's decision to file a disciplinary report didn't serve any legitimate penological interest. It is only when one accepts Officer Ostrander's contrary, disputed version of the facts (*i.e.*, thigh touching occurred) that the filing of the complaint can be viewed as a legitimate effort to enforce the ADC's goals. Summary judgment is not available in this circumstance.

### C. Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "A Government official's conduct violates clearly established law when . . . '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 741 (citation omitted). Although there need not be a "case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* In other words, the case law must "have been earlier developed in such a

1 concrete and factually defined context to make it obvious to all reasonable government
2 actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. Cty.*
3 *of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017).

Officer Ostrander argues she is entitled to qualified immunity. (Doc. 106 at 8-9; Doc. 153 at 6-7.) Specifically, she argues that, although it is clearly established that prisoners have a right to freedom of speech without retaliation, the precedents in this area deal only with retaliation for filing *written* grievances and no precedent placed her on notice that it was unconstitutional to impose discipline in response to a prisoner's *verbal* grievance. (*Id.*)

The Ninth Circuit's decision in *Entler v. Gregoire*, 872 F.3d 1031 (9th Cir. 2017), forecloses this argument. *Entler* involved a series of incidents "[d]uring the summer of 2012" in which a prisoner "submitted written complaints to . . . prison officials" in which he "threatened to initiate civil litigation if his concerns were not addressed." *Id.* at 1033-34. The officials responded by imposing discipline against the prisoner for engaging in improper intimidation and coercion. *Id.* The prisoner, in turn, sued the officials under § 1983, alleging a First Amendment retaliation claim, and the officials moved to dismiss. *Id.* The Ninth Circuit concluded the officials were not entitled to qualified immunity, holding that (1) both "verbal . . . [and] written . . . threats to sue fall within the purview of the constitutionally protected right to file grievances," *id.* at 1039-40, and (2) the law recognizing this right was already established by "clear Ninth Circuit precedent" at the time of the incidents, *id.* at 1040-43.

In her reply brief, Officer Ostrander argues that *Entler* is irrelevant for qualified-immunity purposes because it "post-dates the incident at issue here" and "thus cannot support a finding of clearly-established law." (Doc. 153 at 6-7.) This argument lacks merit. Although *Entler* was decided in October 2017, about one month after Officer Ostrander wrote the disciplinary report, the *Entler* court concluded that prison officials weren't entitled to qualified immunity for incidents that occurred in the "summer of 2012" because the clearly-established law already in place *at that time* showed it was unconstitutional to

retaliate against prisoners for filing "verbal" and "written" grievances.  In support of this conclusion, the *Entler* court cited cases decided in 2015 and 2002.  *Id.* at 1039 (citing *Jones v. Williams*, 791 F.3d 1023 (9th Cir. 2015), and *Hargis v. Foster*, 312 F.3d 404 (9th Cir. 2002)).[6]  If these precedents constituted "clearly established" law by the summer of 2012, they certainly constituted "clearly established" law by the time Officer Ostrander disciplined Karban in September 2017.

Finally, even if the Court were to disregard *Entler*, Officer Ostrander still would not be entitled to qualified immunity.  The Ninth Circuit has held that unpublished decisions of district courts may inform the qualified-immunity analysis.  *Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002).  Before September 2017, several district courts in this Circuit had recognized that a prisoner's verbal complaints constitute protected speech.  *See, e.g.*, *Merrick v. Ellis*, 2015 WL 9999194, *6 (C.D. Cal. 2015) ("Ellis's principal argument is that Merrick had no clearly established right under the First Amendment to be protected against retaliation for his *verbal* complaints. . . . . Ellis's contention relies solely on the distinction between an oral grievance and a written one.  The First Amendment facially makes no such distinction.") (emphasis in original); *Garcia v. Strayhorn*, 2014 WL 4385410, *6-7 (S.D. Cal. 2014) ("[A] number of courts have concluded that verbal statements made by an inmate that essentially constitute a grievance, or that indicate an intent to file a formal written grievance, are protected by the First Amendment."); *Halloum v. Ryan*, 2014 WL 1047144, *5 (D. Ariz. 2014) ("[T]he Court finds that Plaintiff's verbal complaint to a Sergeant about Hernandez's conduct constitutes a protected action under the First Amendment.").

…

---

[6] In *Jones*, the Ninth Circuit recognized that "Jones's [verbal] complaints of discrimination to his supervisors and statements of intention to file suit were conduct protected by the First Amendment."  791 F.3d at 1036.  Similarly, in *Hargis*, the Ninth Circuit reversed a grant of summary judgment against a prisoner asserting a First Amendment claim because "a jury could reasonably conclude that the prison officials acted unreasonably in characterizing [a prisoner's verbal threat to sue] as an attempt to coerce . . . ."  312 F.3d at 411.

Accordingly, **IT IS ORDERED** that:

(1) The reference to the Magistrate Judge is withdrawn as to Karban's motion for summary judgment (Doc. 104) and Officer Ostrander's motion for summary judgment (Doc. 106);

(2) Karban's motion for summary judgment (Doc. 104) and Officer Ostrander's motion for summary judgment (Doc. 106) are **denied**;

(3) This action is referred to Magistrate Judge Burns, having been randomly drawn by the Clerk's office, to conduct a settlement conference; and

(4) Defense counsel shall arrange for the relevant parties to jointly call Magistrate Judge Burns' chambers at (602) 322-7610 within 14 days of the date of this Order to schedule a date for the settlement conference.

Dated this 14th day of May, 2019.

Dominic W. Lanza
United States District Judge